IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TU MY TONG,

      **Plaintiff,**

v.                                **No. 15-CV-191 MCA/SMV**

THE STATES OF NEW MEXICO;
THE GOVERNOR OF NEW MEXICO
SUSANA MARTINEZ; IDA
D'ANTONIO HANGEN, an individual,
LOUIS MARTINEZ, an individual,
And DOES 1 THROUGH 100,
Inclusive,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the United States' *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Supporting Memorandum* [Doc. 4].  In considering the United States' Motion, the Court also considers the following motions:  Plaintiff *pro se's Request for the Unmovable Cases from the case Tong v. The States of New Mexico, The Governor of New Mexico and another two cases: Tong v. Ida D'Antonio Hangen and Tong v. Louis Martinez* [Doc. 7]; Plaintiff's *Request for the cases Tong vs. The States of New Mexico to Remain Within the Law at the Third Judicial District Court Dona Ana County, N.M.* [Doc. 8]; *Plaintiff's Second Amended Opposition to Motion to Dismiss, and Request for Reinstatement of Individual Defendants and Leave to File First Amended Complaint* [Doc. 16]; and *Defendant United States' Motion to Strike Second Amended Complaint [Doc. 17] and Response in Opposition to Motion for Leave to File Amended*

1

*Complaint [Doc. 16].*  [Doc. 21]  The Court has considered the submissions, the pertinent law, and has otherwise been fully informed.  Though Plaintiff requests a hearing [Doc. 35], the Court determines that oral argument would not materially aid in the Court's consideration of the Motions, and thus denies Plaintiff's request.  *See* D.N.M. LR-Civ. 7.6(a).

**BACKGROUND**

Plaintiff's claims arise under multiple jurisdictional statutes.  Upon untangling the various claims and jurisdictional bases, the Court concludes that dismissal is appropriate, in part due to lack of jurisdiction, in part due to the failure to state a claim, and in part under the Court's discretion to decline to exercise supplemental jurisdiction over Plaintiff's claims against the state Defendants arising from state law.

*The Complaint*

The facts giving rise to Plaintiff's claims arise out of the United States' investigation and unsuccessful prosecution of Plaintiff for human trafficking.  [See Doc. 1-2, pp. 8-16]  Plaintiff's First Amended Complaint for Malicious Prosecution (hereafter, Complaint) sets out nine counts by name, all of which are expressly brought against all named Defendants.  [Doc. 1-2 through Doc. 1-6]  Plaintiff's causes of action are:  1) "Intentional Tort Malicious Prosecution" [Doc. 1-2, p. 9]; 2) "Intentional Tort Fraud-Fraudulent" [Doc. 1-2, p. 17]; 3) "Intentional Tort Oppression" [Doc. 1-3, p. 37]; 4) "Intentional Tort Professional Negligence" [Doc. 1-4, p. 31]; 5) "Intentional Tort Terrorism Investigation" [Doc. 1-5, p. 14]; 6) "Intentional Tort . . . Conspiracy" [Doc. 1-

6, p. 23]; 7) "Intentional Tort . . . Forgery" [Doc. 1-6, p. 23]; 8) "Intentional Tort Discrimination" [Doc. 1-5, p. 44]; and 9) "Intentional Tort Damages" [Doc. 1-6, p. 8].

The Court must liberally construe Plaintiff's Complaint. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Within her Complaint, Plaintiff, who cites the Due Process and Equal Protection Clauses [Doc. 1-6, p. 7], is attempting to set forth Constitutional claims alleging race-based selective prosecution and prosecution in violation of the Fourth Amendment's probable cause requirement.[1] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

The allegations pertinent to Plaintiff's selective prosecution[2] claim include that she is a Vietnamese refugee and American Citizen, [Doc. 1-2, p. 10] but Luis Martinez (the prosecuting attorney, which Ms. Tong spells as Louis but which is accurately spelled Luis), Special Agent Ida D'Antonio Hangen (the investigating FBI Agent), the alleged victims, several witnesses, and her co-Defendant (whose charges were dismissed in exchange for his testimony against Plaintiff) were all Hispanic. [Doc. 1-2, pp. 2, 9, 13, 18; Doc. 1-3 pp. 12, 22, 25] Several witnesses attended a local Hispanic church together and someone would pick up the alleged trafficking victims, a couple, and take them to

---

[1] Indeed, in her Proposed Amended Complaint, Plaintiff expressly identifies *Bivens* as the source of her cause of action.

[2] The Court recounts only a small number of the allegations Plaintiff makes in her 205 page Complaint. Generally, Plaintiff recounts what she perceives to have been procedural irregularities, including but not limited to: the United States repeatedly offering her a plea deal [Doc. 1-5, p. 15]; the Court sequestering her witness and appointing a lawyer to advise him of his right not to incriminate himself at trial [Doc. 1-6, pp. 3-4, 20]; and her attorney not cross-examining witnesses in the manner Plaintiff thought was correct. [Doc. 1-5, p. 35] Though Plaintiff's remaining allegations may be relevant to Plaintiff's other claims, the Court concludes that they are not relevant to her constitutional selective prosecution or lack of probable cause claim.

church.  [Doc. 1-2, pp. 18-19, 41; Doc. 1-3, pp. 22, 25]    The couple then saw a flyer advertising clemency for the victims of human trafficking and claimed to be victims of human trafficking.  [Doc. 1-2, p. 41; Doc. 1-3, p. 45; Doc. 1-6, 10-11]  Plaintiff's co-defendant, Daniel Cuellar, who transported the couple from Los Angeles, California to Ruidoso, New Mexico, knew that the couple were illegal aliens, but transported them anyway.  [Doc. 1-3, p. 21; Doc. 1-4, p. 1]  Upon arresting Mr. Cuellar, Special Agent Hangen questioned him and noted in her report that he had been stopped for potential alien smuggling before, but was not prosecuted.  [Doc. 1-3, p. 24]  Ms. Hangen stated in her report that based on this history Cuellar "lost any credibility that he was upset about smuggling illegal aliens" because, he claimed, he "was not aware" that they were undocumented.  [Doc. 1-3, p. 24]  Despite Ms. Hangen's early determination that Mr. Cuellar lacked credibility, on the eve of trial, the Government offered Mr. Cuellar a plea deal in exchange for his testimony against Plaintiff.  [Doc. 1-6, pp. 1-2]

Plaintiff also repeatedly alleges that she was prosecuted despite lack of probable cause.  [Doc. 1-2, p. 16]  She asserts several reasons that probable cause was absent. Tong alleges that Ms. Hangen did not disclosed her report incriminating Cuellar early in discovery [Doc. 1-3, p. 21] and did not provide it to the grand jury.  [Doc. 1-6, p. 1] Tong also asserts that the FBI never took her statement, or "testimony," during the investigation, [Doc. 1-2, pp. 18, 19] and instead relied on the statements of her Co-Defendant, Cuellar, who was not credible.  [Doc. 1-3, pp. 11, 14-17]  She also asserts that the FBI should not have relied on the "hearsay" statements of the alleged victims and other witnesses.  [Doc. 1-5, p. 9]  Plaintiff's Complaint and the documents which she

4

attaches indicate that Coyoy, one of the alleged victims, reported to the FBI that he had worked for "Tom and Loy" (associates of Plaintiff) in Los Angeles for about a year. [Doc. 1-2, p. 34]  According to Coyoy's statement to the FBI, Tong contacted Coyoy from New Mexico and asked if he and his wife wanted to work for her in New Mexico. She said that she would pay them $12 an hour, not charge for room or food, and that they would be transported free of charge to New Mexico.  Coyoy told Tong that they "did not have any papers" and she responded "I know how to bring you."  [Doc. 1-2, p. 34]

Plaintiff also sues Governor Susana Martinez and the State of New Mexico (the State Defendants) for identical causes of action.  She alleges a conspiracy between all State and Federal Defendants as to each Count.  For each count she makes this or a substantially similar allegation:

> [T]he States of New Mexico partnership defendants were neglect of government's duties, of governance's responsibility and liability.  The States of New Mexico partnership/corporate governance were neglectful a criminal lawsuit in the governance plaintiff's position.  They were treat the Vietnamese refugee American defendant (the defendant under suspicion) within discrimination, within the sense's prejudice unfairness.
>
> That the partnership corporate governance states of New Mexico in the plaintiff's position were treat the Vietnamese refugee American suspicion defendant in ulterior purpose and motivation as scorn, discrimination in so misusing the process in these described manner were to obtain the following collateral advantage over the plaintiff.  That Defendants were purpose to sought to throw plaintiff into prison as sentence for twenty years plus one mil fine.  It should be confiscate plaintiff's property, business.

[Doc. 1-2, p. 10]  Plaintiff alleges that, before and during the trial, she submitted letters to Governor Susana Martinez,[3] detailing all of the alleged wrongdoings and wrongful acts she suffered before and during the trial, but no one intervened.  [Doc. 1-2, p. 19; Doc. 1-5, pp. 32, 34-41]  She also alleges that she began getting wrongful taxation assessments from the State of New Mexico and "this tax's problem was flow from the prosecutor SA FBI Ida Hangen."  [Doc. 1-6, pp. 16-17]

### *Procedural History*

Special Agent Hangen and Mr. Martinez removed this matter to this Court on March 5, 2015 "pursuant to 28 U.S.C. §§ 1441, 1442(a)(1), and 2679(d)(2)."  [Doc. 1, p. 1]  The United States then substituted itself as a party for Agent Hangen and Mr. Martinez pursuant to 28 U.S.C. § 2679(d)(1).[4]  [Doc. 2]:

---

[3] Plaintiff also repeatedly alleges that she posted her "accuse statement" to a myriad of web-pages, including Facebook, change.org, and Dr. Phil, and sent it to individuals such as New Mexico's Senators and President Barack Obama.  [Doc. 1-3, p. 34]  Plaintiff does not explain what she thought the State (or any) Defendants were required to do based on these letters and internet posts.

[4] 28 U.S.C. § 2679(d)(2) states:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

Section 2679 also states that such claims "shall be removed without bond at any time before trial by the Attorney General to the district court of the United States."  *Id.*

The United States moved to dismiss "Plaintiff's claims on the basis that she failed to exhaust her administrative remedies under the FTCA prior to filing her civil action." [Doc. 4, p. 2]  The United States does not seek dismissal of Plaintiff's claims against the United States or federal Defendants on any other grounds.  [Doc. 4]

Among other documents, Plaintiff filed two documents which the Court understands to be Motions to Remand [Doc. 7; Doc. 8], and she also filed a document entitled *Plaintiff's Second Amended Opposition to Motion Dismiss, and Request for Reinstatement of Individual Defendants and Leave to File First Amended Complaint.* [Doc. 16]  Plaintiff herein requests leave to file an Amended Complaint.  Though she filed the Proposed Amended Complaint separately [Doc. 17], the Court will review the Proposed Amended Complaint as though it was properly filed attached to the Motion for Leave to File Amended Complaint.  D.N.M. LR-Civ. 15.1.

In her Proposed Amended Complaint, Plaintiff identifies 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights) as the bases of jurisdiction for her claims.  [Doc. 17, ¶ 1]  Thus, she apparently concedes that this Court has jurisdiction (though she has not withdrawn her motions to remand).  She again names Special Agent Ida D'Antonio-Hangen and Luis Martinez as defendants.  [Doc. 17, ¶ 4]  In response, the United States filed *Defendant United States' Motion to Strike Second Amended Complaint [Doc. 17] and Response in Opposition to Motion for Leave to File Amended Complaint [Doc. 16]*.  [Doc. 21]

The Court addresses the issues raised in the above motions in turn.

**ANALYSIS**

7

*Remand*

"[F]ederal courts are courts of limited jurisdiction and require both constitutional and statutory authority in order to adjudicate a case." *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1164 (10th Cir. 2004). Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 1441 provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The party asserting federal jurisdiction bears the burden of establishing its existence, *see Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974), and a matter "shall" be remanded "[i]f at any time . . . it appears that the district court lacks subject matter jurisdiction," 28 U.S.C. § 1447(c); *see also Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) ("Since federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.").

In deciding whether an action arises under federal law, this Court is "guided generally by the 'well-pleaded complaint' rule, under which a suit arises under federal law 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law." *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996) (*quoting Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908)).

To decide whether this case must be remanded this Court must identify the legal basis of each of Ms. Tong's claims and the associated jurisdictional statute.  To the extent Plaintiff brings tort claims against the United States or any federally employed officer, such claims must be brought under the Federal Tort Claims Act.  28 U.S.C. § 2679(b)(1).  Pursuant to 28 U.S.C. § 1346(b)(1), federal courts have exclusive jurisdiction over such actions.  Thus, Plaintiff's motion to remand these claims must be denied.[5]

To the extent Plaintiff brings claims premised on a violation of her rights under the United States' Constitution, against both the federal and state agents, this Court has jurisdiction over such claims.  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Given jurisdiction under Section 1331, by operation of 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's "other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Thus, the Court must deny Plaintiff's motion to remand, as removal was proper.  However, if the Court dismisses "all claims over which it has original jurisdiction," the Court may remand Plaintiff's state tort claims against the state defendants.  28 U.S.C. § 1367(c)(3).  In deciding whether to exercise supplemental, or pendant jurisdiction, the Court must consider "the values of judicial

---

[5] Further, as discussed later, these claims must be dismissed for lack of jurisdiction.  *See Jiron v. Christus, St. Vincent Reg'l Med. Ctr.*, 960 F.Supp.2d 1147, 1151-52 (D.N.M. 2012) (dismissing and not remanding Federal Tort Claims Act claims brought in the first instance in state court due to lack of derivative jurisdiction).

economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

### *Motion to Strike Amended Complaint and Deny Leave to Amend*

Defendant requests the Court to strike Plaintiff's Proposed Amended Complaint [Doc. 17] or to deny her leave to file her Proposed Amended Complaint on the grounds of futility.  [Doc. 21]  Plaintiff clearly seeks leave to amend [Doc. 16], and thus she complied with Federal Rule of Civil Procedure 15(a)(2) requiring Plaintiff to request leave to amend.  Thus, the Court will not strike the proposed amended complaint,[6] but will analyze whether leave to amend should be granted.

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, the Court "may deny leave to amend where amendment would be futile." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.*   The United States argues that Plaintiff's proposed amended complaint is futile because both Assistant United States Attorney Luis Martinez and Special Agent Ida Hangen are immune from suit.  [Doc. 21, pp. 5-6]  In

---

[6] Tong may be claiming that Document 17, which she titled "First Amended Complaint and Request for Jury Trial," is not her second Amended Complaint.  [Doc. 32, pp. 7-8] Nonetheless, Plaintiff states that she "filed this suit in State Court on 12-29-2014, this summons complaint had been attached 15 pages Tong's statement to the New Mexico Senators/December 2014, included two of Tong's letters to the Senator Heinrich Martin – (D-NM)-Senator Udall Tom (D.N.M.)."  [Doc. 32, p. 4, ¶ 1]  She further states that "On Jan. 04, 15 Tong filed First Amended Complaint."  [Doc. 32, p. 4, ¶ 3]  Because "[a] civil action is commenced by filing a complaint with the court," Fed. R. Civ. P. 3 and N.M.R.A. 1-003, some document that Plaintiff filed on December 29, 2014 was considered to be her first complaint, making her filing on January 4, 2015 her First Amended Complaint and Document 17 her Proposed Second Amended Complaint.

response,[7] Plaintiff mostly repeats the allegations which form the basis of her complaint. To the best the Court can discern, Plaintiff believes that, based on the nature of the claims which she brings, the Defendants are not entitled to immunity.  [Doc. 32, p. 17]

Mr. Martinez is entitled to absolute immunity with regard to his decision to prosecute Ms. Tong.  *Hartman v. Moore*, 547 U.S. 250, 261-62 (2006) (stating that a prosecutor "is absolutely immune from liability for the decision to prosecute.").  As to Agent Hangen, the United States argues that she is entitled to "absolute quasi-judicial immunity" for the execution of the valid arrest warrant, citing *Zamora v. City of Belen*, 383 F. Supp. 2d 1315, 1337 (D.N.M. 2005).  [Doc. 21, p. 5]  While this may be the case, the United States did not attach the warrant to its Motion, and the Court believes that such an issue requires a factual record and thus is more properly decided on a Motion for Summary Judgment.  Nonetheless, as explained below, considering Federal Rule of Civil Procedure 12(b)(6) in addition to the immunity doctrines raised by the United States, the Court agrees with the United States' that allowing Plaintiff to amend her complaint would be futile.

### *Plaintiff's Constitutional Claim against the Federal and State Defendants*

A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. At the same

---

[7] Plaintiff did not meet the deadline to respond to the United States' Motion, but argues that the United States did not mail her the Motion.  [Doc. 32, p. 6]  Even allowing Plaintiff's untimely response, it is not persuasive.

time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.

   The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. Not every fact must be described in specific detail, and the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him [or her], should be allowed to amend his complaint. Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.

*Hall*, 935 F.2d at 1110 (internal citations and footnotes omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief).

   Plaintiff claims that Mr. Martinez and Agent Hangen prosecuted her based on her race. [Doc. 1-2, p. 10; Doc. 1-2, p. 13; Doc. 1-6, p. 6]  Read liberally she is bringing a *Bivens* claim for selective prosecution violating the Fifth Amendment's Due Process and Equal Protection Clauses against these federal agents.[8]  *See, e.g., U.S. v. Armstrong*, 517 U.S. 456, 465 (1996) ("The requirements for a selective-prosecution claim draw on ordinary equal protection standards. . . .  To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." (Internal quotation marks and citations omitted.)); *c.f. Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003) (establishing the evidentiary requirements for a selective prosecution claim), *appeal after remand,* 474

---

[8] Substitution of the United States is not available under these Constitutional claims.  28 U.S.C. § 2679(2)(A).

F.3d 733 (10th Cir. 2007).  As against the State Defendants, Plaintiff is bringing claims for constitutional violations under 42 U.S.C. § 1983.

> Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss sua sponte when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.

*Hall*, 935 F.2d at 1109-10 (internal quotation marks and citation omitted).

Under the circumstances of this case the Court concludes that it is proper to *sua sponte* analyze whether Plaintiff's facts state a claim against the United States for selective prosecution.  After considering all allegations set out by Plaintiff in her First Amended Complaint and her Proposed Amended Complaint, the Court concludes that they do not.

Though "discriminatory intent can be shown by either direct or circumstantial evidence[,] . . . a credible showing of both discriminatory effect and discriminatory intent" is required.  *U.S. v. Deberry*, 430 F.3d 1294, 1299-1300 (10th Cir. 2005) (internal quotation marks and citations omitted).  Plaintiff's circumstantial evidence does not allow an inference of either discriminatory effect or discriminatory intent.  Alone, the fact that the prosecutors, FBI Agents, witnesses and alleged victims were Hispanic and Plaintiff is Vietnamese American does not establish discrimination.  The Court cannot assume that simply because individuals are of one race they discriminated against individuals of another race.  *See Ah Sin v. Wittman*, 198 U.S. 500, 508 (1905) ("No latitude of intention should be indulged in a case like this. There should be certainty to every intent.").

13

Plaintiff's remaining allegations fail set out facts which could establish a discriminatory intent or effect.  Plaintiff states:

> [T]he Race Track at this Ruidoso Town were hiring the most Illegal Alien Hispanic worked in there since many years, but why not any FBI, SA Border patrol, ICE, Ruidoso-Ruidoso Down polices, U.S. attorneys, District attorneys, as were came to do any investigation in there.  Why to all of these substantial professional officers appellation government were not have any one have any mention to that the Ruidoso Race Track's Hispanic Workers?  Nevertheless to all of these substantial professional officers appellation government were challenge to the only one woman Vietnamese Refugee American with their intentionally to throw Tong into the prison, plus take away Tong's property as 1 mil Fine.

[Doc. 1-6, p. 6] She asks how many illegal aliens work at New Mexico ranches, and the Hobbs Race Track, and states "Tong, plaintiff wish to be treated fairly as are the trainers [that] hire undocumented workers at Race Tracks in New Mexico."  [Doc. 1-6, pp. 6-7] These allegations do not "plead sufficient factual matter to show" that Defendants investigated and prosecuted Plaintiff "not for a neutral, investigative reason but for the purpose of discriminating on account of race."  *Iqbal*, 556 U.S. at 677.  In order to state a claim for selective prosecution, Plaintiff would have to specifically "identify individuals who were not [Vietnamese] and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted."  *United States v. Armstrong*, 517 U.S. 456, 470 (1996).  Though Plaintiff asks many questions, she does identify actual, known human traffickers that the United States failed to prosecute.

Plaintiff's failure to sufficiently allege facts showing a discriminatory intent or effect is underscored by *Blackwell v. Strain*, 496 Fed.Appx. 836 (10th Cir. 2012) (unpublished decision).  In *Blackwell*, our Tenth Circuit scrutinized the type of evidence

14

necessary to sustain a claim of race-based selective prosecution.  At the district court level, the case was before this Judge, who concluded that the plaintiff had set forth sufficient evidence from which a jury could infer selective inspection of black truck drivers coming through the Lordsburg, New Mexico Port of Entry (POE) by Officer Strain, a New Mexico Motor Transportation Division officer.  *Id.* at 838.  The plaintiff submitted three types of statistical evidence, including that "30.6% of the arrests by Officer Strain at the POE are Blacks, even though Black truckers make up only 14.6% of the truckers passing through the POE."  *Id.* at 841 (internal quotation marks and citations omitted).  Our Circuit Court rejected this evidence, concluding that it was "only relevant if it can be presumed that arrestable offenses were committed proportionately by all races—a presumption prohibited by *Armstrong*."  *Id.* at 842.  Further, the Plaintiff submitted evidence from other black truckers discussing the way that Officer Strain dealt with them, including reaching for his sidearm when they questioned his actions.  *Id.* at 846-47.  The Court found this evidence did not create a question of fact for the jury because

> [T]here is no evidence that non-black truck drivers who were stopped, detained, and subjected to heightened inspections by Officer Strain were treated any differently from these truckers. . . . Like Blackwell, these truck drivers' allegations of racial discrimination are based on their personal opinions they were stopped, detained, subjected to a heightened inspection level, or treated badly by Officer Strain because they are black. *This is not evidence from which a jury could reasonably infer Officer Strain was motivated by a discriminatory purpose.*

*Id.* at 847 (internal citations omitted; emphasis added).

Plaintiff's Complaint does not plead facts under which she could establish the evidentiary showing required by *Blackwell*.  Accordingly, Plaintiff's claims of selective prosecution against all Defendants, State and Federal, must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[9]

Finally, to the extent that Agent Hangen would not be immune from a claim of malicious prosecution based on the allegation that she lacked probable cause, Plaintiff has not stated a claim for relief.  Despite Plaintiff's frustration with Ms. Hangen's decision not to take her statement prior to charging Plaintiff, Ms. Hangen's decision did not result in any procedural violation or, moreover, a lack of probable cause.  *C.f. Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (stating that there is not generally a duty to investigate an alibi witness).  Further, those individuals who testified in Court as to what happened to them, including the alleged victims, were not giving hearsay testimony, and more importantly, the statements they and the other witnesses gave to Agent Hangen supplied probable cause for Plaintiff's arrest and prosecution.  *See id.* at 1466-67 (addressing probable cause to effect a warrantless arrest; stating that the plaintiff has the burden to establish that the witnesses statements "did not constitute reasonably

---

[9] Plaintiff asserts in this case that she is entitled to entry of default judgment against Defendants Hangen, Martinez, and the State Defendants.  [Doc. 7, pp. 1-2]  As to the Federal Defendants, no answer is required yet by operation of Federal Rule of Civil Procedure 12(a)(4).  As to the State Defendants, even when a party fails to answer, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (internal quotation marks and citations omitted).

16

trustworthy information sufficient to lead a prudent police officer to conclude" that suspected crime occurred).

### *Plaintiff's Tort Claims against the Federal Defendants*

Plaintiff has disavowed any federal tort claims against the federal Defendants. [Doc. 16, p. 2]   Further, as argued by the United States, Plaintiff would have been required to give notice under the Tort Claims Act.  Plaintiff does not assert that she filed a tort claims notice.  [Doc. 12, p. 2]  Thus, Plaintiff's claims under the Tort Claims Act are dismissed.  *Estate of Trentadue ex rel. Aguilar v. U.S.*, 397 F.3d 840, 852 (10th Cir. 2005) ("Because the FTCA constitutes a waiver of the government's sovereign immunity, the notice requirements established by the FTCA must be strictly construed.   The requirements are jurisdictional and cannot be waived."); *see also Jiron.*, 960 F. Supp. 2d at 1151-52 (dismissing Federal Tort Claims Act claims brought in the first instance in state court due to lack of derivative jurisdiction).

### *Plaintiff's State Law Claims Against the Remaining Defendants*

The Court herein dismisses all of the claims over which this Court has original jurisdiction.  Having so dismissed these claims, the Court concludes that it is in the interest of judicial economy, convenience, fairness and comity to remand Plaintiff's remaining state law claims against the State Defendants to the Third Judicial District Court for the County of Dona Ana, State of New Mexico.

**CONCLUSION**

**WHEREFORE IT IS HEREBY ORDERED:**

1) All of Plaintiff's claims against the United States, Ida D'Antonio-Hangen and Luis Martinez are DISMISSED;

2) Plaintiff's claims arising under federal law against the Governor Susana Martinez and "the States of New Mexico" are DISMISSED; and

3) The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims arising under New Mexico law against the New Mexico State Defendants are remanded to the Third Judicial District Court, County of Dona Ana, New Mexico.

SO ORDERED this 26th day of August, 2015 in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
Chief Judge, United States District Court

18